**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 9 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MICHAEL S. WAMPOLD; DINA L. WAMPOLD, husband and wife and the marital community composed thereof,<br><br>  Plaintiffs-Appellants,<br><br>  v.<br><br>SAFECO INSURANCE COMPANY OF AMERICA, a non-Washington corporation,<br><br>  Defendant-Appellee. | No.   19-35972<br><br>D.C. No. 2:19-cv-00169-TSZ<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Submitted September 4, 2020[**]
Seattle, Washington

Before: HAWKINS and McKEOWN, Circuit Judges, and CALDWELL,[***] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Karen K. Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Michael Wampold and Dina Wampold ("the Wampolds") appeal from the district court's order granting partial summary judgment to Safeco Insurance Company ("Safeco") in the Wampolds' action for breach of contract, declaratory judgment regarding the coverage available under their Safeco insurance policy, and for violation of Washington's "Insurance Fair Conduct Act," RCW 48.30.015.  The district court did not dismiss all of the Wampolds' claims, but certified the disposition as a final judgment under Fed. R. Civ. P. 54(b).  The parties are familiar with the facts, so we do not repeat them here.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

At issue on appeal is the district court's interpretation of the Wampolds' insurance agreement with Safeco.  The agreement language reads in relevant part: "If a claim is made or a suit is brought against any insured for damages because of . . . property damage caused by an occurrence to which this coverage applies, we will . . . pay up to our limit of liability for the damages for which the insured is legally liable."  The district court determined that there were several elements of the Wampolds' claim for indemnification of costs spent on stabilization work required by the City of Mercer that brought it outside of the coverage provided for by their insurance agreement.  The Wampolds challenge each of these determinations on appeal.

Even if we assume without deciding that the district court erred when it

determined that the actions by the City of Mercer were a "claim" against the Wampolds, that the expenses incurred by the Wampolds to comply with the city were "damages," and that the Wampolds were "legally liable" for those expenses, the district court did not err in granting partial summary judgment because those damages were not "because of . . . property damage."

The Wampolds argue that the relevant "property damage" at issue was the damage done to a home downhill. But the purpose of the stabilization work required by the city's "red tag" and "yellow tag" of the Wampolds' home was to ensure that the home was stabilized and safe for occupancy and to decrease the risk of future destabilization of the hillside. This is the difference between required remediation resulting from an occurrence and measures to prevent future damage before it has occurred. *See Olds-Olympic, Inc. v. Comm. Union Ins. Co.*, 918 P.2d 923, 930 (Wash. 1996).

The Wampolds point to *Boeing Co. v. Aetna Casualty and Surety Co.* to support their argument that "because of . . . property damage" includes remedial measures taken after property damage has occurred. 784 P.2d 507, 516 (Wash. 1990) ("[C]osts owing because of property damages are remedial measures taken after pollution has occurred, but preventive measures taken before pollution has occurred are not costs incurred because of property damage."). The stabilization wall required by the city's red tag was not remedial, but instead prophylactic, and

3

4

aimed at preventing future damage to both the Wampolds' home and neighboring properties.  Because the red tag required by the city was a preventative measure to ensure that future damage would not result from further destabilization of the hillside, it was not "because of . . . property damage."

    **AFFIRMED.**